

NUMBER 13-13-00183-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**THE STATE OF TEXAS,**                                                                 **Appellant,**

**v.**

**RENE GUTIERREZ,**                                                                 **Appellee.**

**On appeal from the 148th District Court
of Nueces County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Perkes
Memorandum Opinion by Chief Justice Valdez**

An eleven-member jury found Rene Gutierrez guilty on two counts of aggravated

assault with a deadly weapon, *see* TEX. PENAL CODE ANN. § 22.02(a)(2) (West, Westlaw

through 2015 R.S.), and one count of harassment of a public servant, *see id.* § 22.11(a)(2)

(West, Westlaw through 2015 R.S.).  The trial court assessed punishment at twenty years'

imprisonment. Thereafter, Gutierrez filed a timely motion for new trial. After conducting an evidentiary hearing on Gutierrez's motion, the trial court granted a new trial. By one issue, the State contends that the trial court abused its discretion in granting Gutierrez's motion for new trial. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On February 4, 2012, at around midnight, a police officer arrested Gutierrez outside a bar for pulling a knife out on two bouncers who refused to let him reenter the bar after he had been kicked out for fighting with another patron. Following his arrest, Gutierrez spit on the police officer while the police officer secured him for transport away from the bar. Thereafter, the State indicted Gutierrez, in relevant part, on two counts of aggravated assault on the bouncers and one count of harassment of a public servant for spitting on the police officer.

The trial court called the case for trial. Voir dire proceeded, the trial court empaneled a twelve-member jury, and the State called the police officer as its first witness. However, before the police officer could testify, one of the jurors that had been empaneled informed the trial court that he went to high school with the police officer, and that in the years since high school, they had occasion to see each other approximately six times, "at either a nightclub or like at [a] restaurant or something." The juror also related that he would have conversations with the police officer at nightclubs while the officer was on duty, and that he considered the police officer to be a "good guy" for whom he had "respect." When asked by the trial court whether his relationship with the police officer would affect his ability to be fair and impartial in the case, the juror answered:

2

"That's a hard question." When pressed further, the juror answered: "I can [say that my relationship with the police officer is] not going to affect me, but I hate to lie [.]"[1]

Outside the presence of the jury, the parties discussed how to proceed in light of the situation. The trial court stated that, in its view, the juror provided no basis to support striking him for cause but then suggested that the parties nevertheless consider the option of dismissing the juror and agreeing to continue with only eleven jurors.[2] Gutierrez's counsel stated on the record that he would ask for a mistrial "if" the parties could not reach an agreement to proceed with eleven jurors.

The record of the proceeding below reflects that after a short recess, the prosecutor and Gutierrez's trial counsel entered into an apparent agreement to proceed with eleven jurors. The trial judge then asked Gutierrez on the record whether he was also in agreement to dismiss the juror and proceed with eleven jurors, but Gutierrez's trial counsel interjected before Gutierrez could answer and requested some time to talk to his client. After another short recess, Gutierrez's trial counsel urged an oral motion to proceed with eleven jurors on the record, which the State joined. With both sides in apparent agreement on the matter, the trial court dismissed the juror, and the State presented its case-in-chief to an eleven-member jury.

At trial, the testimony showed that Gutierrez was escorted to the outside area of a bar for fighting with another patron. Two bouncers, both employed by the bar, remained outside with Gutierrez in order to make sure that he did not try to reenter the bar and continue fighting. While the two bouncers were monitoring Gutierrez, he pulled out a knife

---

[1] Although the juror indicated that he might have difficulty being a fair and impartial juror, other parts of his testimony contain affirmations that he could be fair and impartial.

[2] The record is silent as to whether an alternate juror was available to replace the juror.

and began swinging it in their direction from a distance of about three to four feet.[3] There was no testimony that Gutierrez ever lunged toward the bouncers with his knife or got closer than three feet to them.

The testimony also showed that a police officer was called to the scene soon after Gutierrez pulled out the knife.[4] After interviewing several witnesses, including the two bouncers, the police officer determined that Gutierrez would be placed under arrest. However, Gutierrez consistently resisted the police officer's attempt to arrest him, so the police officer pepper-sprayed him twice. After being arrested and pepper-sprayed, Gutierrez spit at the police officer several times throughout the night, with Gutierrez's spit actually landing on the police officer once. Both bouncers and the police officer testified to these facts at trial, and, based on their testimony, the eleven-member jury found Gutierrez guilty of assaulting the bouncers with his knife and harassing the police officer with his spit.

Following trial, Gutierrez filed a timely motion for new trial, alleging, in relevant part, (1) that his trial counsel was ineffective in agreeing to proceed with eleven members without adequately advising him of his right to urge a mistrial based on the biased juror; and (2) that the verdict was contrary to the law and the evidence. The trial court held a hearing on Gutierrez's motion for new trial. Concerning his ineffective-assistance claim, Gutierrez testified that his trial counsel essentially gave him insufficient information in order to make an informed decision about whether to continue trial with less than a full,

---

[3] Both bouncers testified that Gutierrez's use of the knife outside the bar scared them.

[4] By the time the police officer made contact with Gutierrez outside the bar, however, Gutierrez had already voluntarily relinquished the knife to one of the bouncers, who, in turn, later gave it to the police officer as evidence.

twelve-member jury. Specifically, Gutierrez testified that although he was in agreement to dismiss the juror and proceed with eleven jurors, his trial counsel never told him that he also had the option to urge a mistrial. Gutierrez testified that he would have requested a mistrial had counsel explained to him that the option was available.

Gutierrez's trial counsel also testified at the new-trial hearing concerning his representation of Gutierrez at trial. Trial counsel testified that in his twenty-five year career as a criminal defense lawyer, he had never encountered a situation such as the one that occurred with the juror in this case and that he had never proceeded to trial with only eleven jurors. Regarding his private discussion with Gutierrez, trial counsel recalled telling Gutierrez that it would be advisable to proceed with eleven jurors in order to keep the juror, who was friends with the police officer, from serving on the jury. However, trial counsel could not recall whether he actually told Gutierrez that he could have insisted on a twelve-member jury by moving for a mistrial instead of agreeing to an eleven-member jury. Finally, trial counsel testified that the issue caught him by "surprise"; that with more experience, he would have "assessed the situation a lot better"; and that he was not "adequate in advising [Gutierrez]" about his options.

Concerning Gutierrez's claim that the verdict was contrary to the law and evidence, Gutierrez argued that he did not assault the bouncers with a knife because there was no evidence that he ever "lunged" at them with his knife. Gutierrez further argued that he did not intentionally harass the police officer with his spit because the pepper spray caused a reaction that made him spit involuntarily.

By way of a written order, the trial court granted Gutierrez's motion for new trial. Thereafter, the State filed a motion requesting findings of fact and conclusions of law from

5

the trial court. In an apparent response to the State's request, the trial court made an entry in its docket sheet, which states as follows:

> Findings of Fact and Conclusions of Law: Counsel for [Gutierrez] was unprepared for trial, did no [investigation], interviewed no witnesses [and] [the court] finds [ineffective assistance of counsel]; court grants [the motion for new trial] also in the interest of justice; court finds [insufficient evidence] as to [the aggravated assault with a deadly weapon counts].[5]

This appeal followed.

## II. MOTION FOR NEW TRIAL

In its sole issue, the State contends that the trial court erred in granting Gutierrez's motion for a new trial.

### A. STANDARD OF REVIEW

A convicted defendant generally carries the initial burden to allege and prove the grounds that would entitle him to a new trial. *See Pina v. State*, 127 S.W.3d 68, 72 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (citing *Patrick v. State*, 906 S.W.2d 481, 498 (Tex. Crim. App. 1995)). If the trial court orders a new trial, the State has the right to appeal the order to this Court. *See* TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(3) (West, Westlaw through 2015 R.S.) (providing that the State is entitled to appeal an order in a

---

[5] Although the trial court purported to make findings in its docket sheet regarding the adequacy of trial counsel's pretrial investigation and preparedness for trial, Gutierrez did not allege these grounds in his motion for new trial, and he presented no evidence to support them at the new-trial hearing. Additionally, the trial court purported to grant a new trial "in the interest of justice" even though, again, Gutierrez never requested a new trial on that basis in his motion nor did he urge the same at the new-trial hearing. The State need defend only against the allegations actually asserted in a defendant's motion for new trial. *See State v. Shelton*, 869 S.W.2d 513, 514 (Tex. App.—Tyler 1993, no pet.) (citing *State v. Gonzalez*, 855 S.W.2d 692, 694–95 (Tex. Crim. App. 1993)); *see also State v. Blanco*, 953 S.W.2d 799, 802 (Tex. App.—Corpus Christi 1997, pet. ref'd). The trial court thus could not have properly granted a new trial on those grounds, and we find no evidence in the record to support affirming the trial court on that basis. In any event, findings of fact and conclusions of law are generally not to be considered when they are included only in a docket entry. *See Rush v. Barrios*, 56 S.W.3d 88, 95 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). As such, our discussion of the State's issue on appeal will focus on the grounds that Gutierrez actually alleged in his motion for new trial and supported with evidence at the new-trial hearing, which include (1) the verdict being contrary to the law and the evidence; and (2) the ineffective assistance claim stemming from trial counsel's handling of the eleven-juror issue.

6

criminal case if the order grants a new trial).  Because the State is the appellant in this context, it has the burden on appeal to prove that the trial court erred in granting the defendant a new trial.  *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004); *State v. Belcher*, 183 S.W.3d 443, 447 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

On appeal, we review the trial court's order granting a new trial for an abuse of discretion.  *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007).  To determine whether the trial court abused its discretion, we must "view the evidence in the light most favorable to the trial court's ruling and uphold the trial court's ruling if it was within the zone of reasonable disagreement."  *Webb*, 232 S.W.3d at 112 (citing *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004)).  We do not "substitute our judgment for that of the trial court, but rather we decide whether the trial court's decision was arbitrary or unreasonable."  *Id*.  Under this deferential review, we presume that the trial court correctly granted a new trial and defer to any plausible, implied factual findings that are supported by the record and that would uphold the trial court's ruling.  *Landers v. State*, 256 S.W.3d 295, 302 n.4 (Tex. Crim. App. 2008); *Belcher*, 183 S.W.3d at 447 (citing *Lee v. State*, 167 Tex. Crim. 608, 322 S.W.2d 260, 262 (1958)).

### B.  DISCUSSION

In challenging the trial court's order granting Gutierrez a new trial, the State contends that the trial court abused its discretion in finding that: (1) the jury's verdict was contrary to the law and the evidence, and (2) Gutierrez's trial counsel rendered ineffective assistance.  If the trial court was correct that the jury's verdict was contrary to the law and the evidence, then Gutierrez would be entitled to an acquittal.  *See State v. Moreno*, 297 S.W.3d 512, 525 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd) (observing that "if a

7

trial court grants a motion for new trial on the basis of [the verdict being contrary to the law and the evidence], double jeopardy prevents the trial court from entering any other judgment than an acquittal"). If, on the other hand, the trial court is only correct on the basis that Gutierrez received ineffective assistance, then he is entitled to a new trial but not an acquittal. *See id.* Because our disposition of this appeal depends on the legal ground for affirming the trial court, we first consider whether the trial court abused its discretion in finding that the verdict was contrary to the law and the evidence.

## 1. Contrary to the Law and Evidence

A motion for new trial based on insufficiency of the evidence presents a legal rather than a factual question, and the trial court must apply the same legal test as that employed by the appellate court in reviewing the sufficiency of the evidence. *State v. Davenport*, 866 S.W.2d 767, 771 (Tex. App.—San Antonio 1993, no pet.) (citing *State v. Daniels*, 761 S.W.2d 42, 45 (Tex. App.—Austin 1988, pet. ref'd)). As such, the trial court is required to determine, after viewing the evidence in the light most favorable to the verdict, whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Id.*; *State v. Macias*, 791 S.W.2d 325, 329–30 (Tex. App.—San Antonio 1990, pet. ref'd). The jury, as the trier of fact, is the exclusive judge of the facts, the credibility of witnesses, and of the weight to be given testimony. *Brooks v. State*, 323 S.W.3d 893, 898–99 (Tex. Crim. App. 2010). If the evidence meets this sufficiency standard, it is an abuse of discretion for the trial court to grant the motion for new trial on the basis that the verdict is contrary to the law and the evidence. *Davenport*, 866 S.W.2d at 771 (citing *Daniels*, 761 S.W.2d at 45).

The sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof, or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.* We now turn to a review of the evidence that supported a finding of guilt as to each offense for which the jury found Gutierrez guilty.

i. **Aggravated Assault with a Deadly-Weapon counts**

As previously noted, the jury found Gutierrez guilty on two counts of aggravated assault with a deadly weapon against the bouncers. Under a hypothetically correct jury charge, Gutierrez was guilty of these offenses if (1) he intentionally or knowingly threatened the bouncers with imminent bodily injury, and (2) used or exhibited a deadly weapon during the commission of the assault. *See* TEX. PENAL CODE ANN. §§ 22.01(a)(2), 22.02(a)(2). A "deadly weapon" is defined in relevant part as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id.* § 1.07(a)(17)(B); *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000) (observing that the placement of the word "capable" in [section 1.07(a)(17)(B)] enables the statute to cover conduct that threatens deadly force, even if the actor has no intention of actually using deadly force"). A knife can be a deadly weapon if the evidence shows that its use or intended use renders it capable of causing death or serious bodily injury. *See McCain*, 22 S.W.3d at 503.

9

Here, both bouncers testified that after they kicked Gutierrez out of the bar for being involved in a fight with another patron, Gutierrez pulled a knife out on them. The knife, which the State admitted into evidence, was described as a folding knife, six-to-seven inches in length, with a black handle. The bouncers testified that Gutierrez pointed the knife in their direction and began swinging the blade from a distance of three-to-four feet while yelling profanities and accusing them of being racist. Both bouncers testified that they felt threatened by Gutierrez's action.

Gutierrez argued at the new-trial hearing that this evidence was not sufficient to prove the charged offenses because the bouncers testified that Gutierrez was always at least a yard's distance away from them when he swung his knife, and neither bouncer testified that Gutierrez ever "lunged" at them with his knife. However, even assuming that Gutierrez never lunged at or came within a yard's distance of the bouncers, a rational jury could have still found that he intentionally or knowingly threatened the bouncers with imminent bodily injury and that by swinging a six-to-seven-inch knife at them from a three-to-four foot distance while using accusatory language, he intended to use the knife in a manner that was capable of causing death or serious bodily injury. *See De Leon v. State*, 865 S.W.2d 139, 140 (Tex. App.—Corpus Christi 1993, no pet.) (finding the evidence sufficient to support aggravated assault with a deadly weapon by threat when defendant confronted the victim and brandished a hunting-style knife—even though the defendant stood several feet away from the victim and, according to the victim, would have "gotten 'nothing but air'" had he lunged forward with the knife).

While it is conceivable that a jury could have found Gutierrez not guilty, the task of the trial court in reviewing the sufficiency of the evidence on a motion for new trial was

10

not to assume the role of a juror, but instead to determine whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Davenport*, 866 S.W.2d at 771. We hold that the trial court abused its discretion in ruling that the jury's verdict as to the aggravated-assault counts were contrary to the law and the evidence because no reasonable view of the record could support it. *See Webb*, 232 S.W.3d at 112; *see also Moreno*, 297 S.W.3d at 522 (holding that the trial court abused its discretion in finding that the verdict was contrary to the law and the evidence when the trial court failed to properly apply the legal sufficiency standard of review); *Gregg v. State*, 881 S.W.2d 946, 950 (Tex. App.—Corpus Christi 1994, pet. ref'd) (observing that trial courts abuse their discretion by acting without guiding rules or principles); *De Leon*, 865 S.W.2d at 140.

### ii. Harassment on a Public Servant count

As previously noted, the jury also found Gutierrez guilty of harassing the police officer by spitting on him. Under a hypothetically correct jury charge, Gutierrez was guilty of this offense if, with the intent to assault, harass, or alarm, Gutierrez spit on the police officer knowing that the police officer was a public servant lawfully discharging an official duty. *See* Tex. Penal Code Ann. § 22.11(a)(2). Gutierrez argued at the new-trial hearing that he lacked the requisite "intent to assault, harass, or alarm" the police officer with his spit because the pepper spray caused him to spit involuntarily. To support this argument, Gutierrez pointed to the police officer's trial testimony, in which he stated that pepper spray tends to make a person spit reflexively. However, the police officer also testified that people who spit in reaction to being pepper-sprayed normally spit toward the ground,

11

and that, unlike those people, Gutierrez was forcefully spitting at him. The police officer also testified that Gutierrez spit at him on more than one occasion and that Gutierrez's spit landed on him once. It was within the jury's province to judge the credibility of the evidence and rationally infer that Gutierrez had the "intent to assault, harass, or alarm" the police officer with his spit. *See Brooks*, 323 S.W.3d at 898–99; *see also Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004) (recognizing that intent may be inferred from circumstantial evidence such as acts, words, and the conduct of the defendant). Therefore, we conclude that the trial court abused its discretion to the extent that it found that the jury's verdict as to the harassment count was contrary to the law and the evidence. *See Moreno*, 297 S.W.3d at 522.

To the extent that the trial court vacated Gutierrez's conviction on the basis that the jury's verdict was contrary to the law and the evidence, we sustain the State's appellate issue and, as such, conclude that the remedy of acquittal is not a proper disposition in this case. *See id.* We now consider whether the trial court's order granting a new trial should be affirmed under the alternative theory that Gutierrez urged in his motion for new trial—i.e., ineffective assistance of counsel. *See id.*

## 2. Ineffective Assistance of Counsel

*Strickland v. Washington* sets forth a two-prong test for reviewing a claim of ineffective assistance of counsel. *See* 466 U.S. 668, 687 (1984). In reviewing the trial court's granting of a motion for new trial based on ineffective assistance of counsel, we do not apply *Strickland's* two-prong test in a de novo fashion. *State v. Kelley*, 20 S.W.3d 147, 151 (Tex. App.—Texarkana 2000, no pet.) (citing *State v. Gill*, 967 S.W.2d 540, 542

12

(Tex. App.—Austin 1998, pet. ref'd)). Rather, "we review the trial court's application of the *Strickland* test through the prism of the abuse of discretion standard."[6] *Id.*

Under *Strickland's* first prong, the defendant must demonstrate that defense counsel's performance was deficient because it fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 688. To make this showing, the defendant must identify the "acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The reviewing court must then determine "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* Generally, if the record is silent as to why trial counsel engaged in the action being challenged as ineffective, there is a "strong presumption" that counsel's conduct was the result of sound trial strategy, falling within the wide range of reasonable professional assistance. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) (citing *Ingham v. State*, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984)). To overcome this presumption, a claim of ineffective assistance must be firmly demonstrated in the record. *Id.* at 814. Thus, it is critical that the necessary record be obtained in the trial court to rebut the presumption that the challenged action of counsel was objectively reasonable and the result of sound trial strategy. *Id.* at 814.

Under *Strickland's* second prong, the defendant must demonstrate that counsel's deficient performance actually harmed or prejudiced his defense. *See Strickland*, 466 U.S. at 692. To demonstrate prejudice, the defendant must show that but for counsel's

---

[6] Additionally, as previously noted, it is the State's burden on appeal to establish that no reasonable view of the record could support the trial court's finding that counsel was ineffective. *See State v. Belcher*, 183 S.W.3d 443, 447 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

deficient performance, there is a "reasonable probability" that the outcome of the trial would have been different.  *Id.* at 694.  A "reasonable probability" in this context refers to a "probability sufficient to undermine confidence in the outcome."  *Id.*

### i.    *Strickland's* First Prong—Counsel's Performance

Concerning *Strickland's* first prong, Gutierrez alleged that his trial counsel failed to inform him that he could have moved for a mistrial after one of the twelve jurors revealed a previous association with Gutierrez's alleged victim, the police officer.  By granting Gutierrez's motion for new trial, the trial court impliedly found that trial counsel failed to adequately explain the procedural option of a mistrial to Gutierrez, which fell below an objective standard of reasonableness.

On appeal, the State argues that the trial judge misapplied *Strickland's* first prong in finding deficient performance because Gutierrez presented no evidence at the new-trial hearing to rebut the presumption that his trial counsel made a strategic decision to proceed with eleven jurors in order to keep the objectionable juror off the jury.  The State's argument fails to address the actual conduct challenged as ineffective.  The challenged action in this case concerns whether trial counsel adequately informed Gutierrez that he could urge a mistrial and, if granted, thereby secure his right to a twelve-member jury— not whether continuing with an eleven-member jury made strategic sense after trial counsel discovered that one of the twelve jurors might be friends with Gutierrez's alleged victim.[7]  *See id.* at 690–91 (observing that even a strategic choice may be unreasonable

---

[7] The State also argues on appeal that trial counsel was not ineffective because the record shows that he actually did request a mistrial based on the juror's bias.  However, our review of the record shows that Gutierrez's trial counsel never requested a mistrial.  Instead, he stated that he would request a mistrial "if" the parties could not agree to continue with eleven.  Because Gutierrez ultimately agreed to proceed with eleven jurors—albeit, without a proper understanding of his procedural options—trial counsel never requested a mistrial.

14

if it was made after a less-than-complete investigation under all the circumstances and was not supported by a reasonable professional judgment). Thus, the relevant question is whether the evidence at the new-trial hearing rebutted the presumption that trial counsel provided professionally reasonable advice before Gutierrez agreed to forfeit his right to have twelve jurors decide his fate. We believe the trial court correctly found that the evidence did rebut this presumption, as Gutierrez testified at the new-trial hearing that he agreed to an eleven-member jury without being told by his trial counsel that he also had the option to preserve his right to a twelve-member jury by requesting a mistrial. Furthermore, concerning what was actually said to Gutierrez, trial counsel testified that he could not recall whether he told Gutierrez about the procedural option of a mistrial, that he simply lacked sufficient time and experience to effectively assess the situation, and that he failed to adequately advise Gutierrez about his choices. Thus, we conclude that the trial court did not abuse its discretion in finding that Gutierrez satisfied *Strickland's* first prong.

### ii. *Strickland's* Second Prong—Prejudice

We now determine whether counsel's conduct prejudiced Gutierrez under *Strickland's* second prong—i.e., but for counsel's inadequate advice, is it reasonably probable that the outcome of Gutierrez's trial would have been different? *See id.* at 694.

Article V, section 13 of the Texas Constitution grants a defendant in a felony trial the right to be tried by a jury composed of twelve people. TEX. CONST. art. V, § 13. Texas statutory and constitutional law has carved out two permissible instances in which a trial can proceed with less than twelve jurors: (1) when the parties agree to do so, and (2) regardless of whether the parties agree, when a juror dies or becomes disabled by a

physical, mental or emotional impairment. *See* TEX. GOV'T CODE ANN. § 62.201 (West, Westlaw through 2015 R.S.) (agreement-of-the-parties exception); TEX. CODE CRIM. PROC. ANN. art. 36.29(a) (West, Westlaw through 2015 R.S.) (dead-or-disabled-juror exception); *see also Carrillo v. State*, 597 S.W.2d 769, 771 (Tex. Crim. App. 1980). Here, the juror that the trial court dismissed did not die, and his bias did not make him disabled. *See Carrillo,* 597 S.W.2d at 771 (holding that biased jurors are not disabled). Consequently, Gutierrez's trial could not continue unless he agreed to proceed with less than twelve jurors. Gutierrez testified that he would not have agreed to proceed with less than twelve jurors had he been informed about the procedural option of a mistrial. Thus, had Gutierrez not agreed to proceed with less than twelve jurors and instead urged a mistrial, the trial court would have been forced to choose between two courses of action: (1) declare a mistrial on account of the juror's bias and empanel a new, twelve-member jury;[8] or (2) not declare a mistrial, keep the twelfth juror on the jury, and face potential reversal on appeal for doing so. *See McClellan v. State*, 143 S.W.3d 395, 401 (Tex. App.—Austin 2004, no pet.). By granting Gutierrez's motion for new trial, the trial court determined that he would have selected the first option—i.e., declare a mistrial.[9]

---

[8] Again, the record is silent as to whether the trial court appointed an alternate juror in this case.

[9] The State argues on appeal that the trial court could not have reasonably found prejudice resulting from trial counsel's failure to request a mistrial because the trial court made a comment at trial that he did not believe the juror was biased. According to the State, the trial court's comment forecloses any implied finding by the trial court that had Gutierrez's trial counsel requested a mistrial, one would likely have been granted. We disagree. Because Gutierrez's trial counsel did not actually request a mistrial, there was never any meaningful argument by the parties about whether a mistrial should be granted, and therefore, the trial court did not have the opportunity to fully consider whether the juror exhibited disqualifying bias meriting a mistrial. Thus, although the trial court's comment appears at odds with its implied finding that a mistrial was warranted, we do not agree with the State that the comment prevented the trial court from finding prejudice.

Historically, a trial court's decision to declare a mistrial is a matter committed to the trial court's broad discretion; and such a decision should be accorded great deference on appeal. *See Ex parte Rodriguez*, 366 S.W.3d 291, 297 (Tex. App.—Amarillo 2012, pet. ref'd) (citing *Arizona v. Washington*, 434 U.S. 497, 509 (1978)). According great deference to the trial court, we find that the record supports a finding that a mistrial would have been warranted in this case, as the dismissed juror testified that he would need to "lie" under oath in order to say that his friendship with the police officer—whom he "respected" and regarded as a "good guy"—would *not* affect his ability to be a fair and impartial juror. *See Simmons v. United States*, 142 U.S. 148, 154 (1891) (mistrial warranted where juror's bias was discovered after jeopardy attached); *see also Villanueva v. State*, 13-12-00425-CR, 2013 WL 4323953, at *1 (Tex. App.—Corpus Christi Aug. 16, 2013, pet. ref'd) (mem. op., not designated for publication) (same).

Because a mistrial would have likely been granted had one been requested, the trial court could have reasonably found that counsel's failure to urge a mistrial on Gutierrez's behalf ultimately deprived Gutierrez of his right to have his case decided by a twelve-member jury under the Texas Constitution. *See* TEX. CONST. art. V, § 13. The trial court could have further found that this error lessened the State's burden to prove Gutierrez guilty beyond a reasonable doubt because, instead of having to convince twelve jurors that a conviction was warranted, the State only had to convince eleven. *See McClellan*, 143 S.W.3d at 401 (holding that error in denying the defendant his constitutional right to a twelve-member jury was harmful because the State only had to convince eleven jurors that the defendant was guilty instead of twelve); *Carrillo*, 597 S.W.2d at 771 (remanding the case for a new trial when an eleven-member jury convicted

17

the defendant of murder without securing his consent to proceed with less than twelve jurors). Thus, the trial court could have determined that but for trial counsel's error, which ultimately lessened the State's burden to prove Gutierrez guilty, a reasonable probability "sufficient to undermine confidence in the outcome" existed such that a new trial was necessary. *Thompson*, 9 S.W.3d at 812. We therefore conclude that the trial court did not abuse its discretion in finding that Gutierrez satisfied *Strickland's* second prong. *See Kelley*, 20 S.W.3d at 151. We overrule the State's sole issue on appeal.

### III. CONCLUSION

We affirm the trial court's order granting Gutierrez's motion for new trial.

**/s/ Rogelio Valdez**
ROGELIO VALDEZ
Chief Justice

Do Not Publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
3rd day of December, 2015.