

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-15-00369-CR

DONALD RAY HAYNES, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 19th District Court
McLennan County, Texas
Trial Court No. 2014-238-C1, Honorable Ralph T. Strother, Presiding

October 31, 2016

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

A jury found appellant Donald Ray Haynes guilty of aggravated sexual assault of a disabled individual[1] and assessed punishment at forty years' confinement in prison. The trial court imposed sentence accordingly. Through two issues appellant argues the evidence was not sufficient to support his conviction and the trial court denied him a defense by limiting the testimony of two defense witnesses. We will overrule appellant's issues and affirm the judgment of the trial court.

---

[1] TEX. PENAL CODE ANN. § 22.021 (West Supp. 2016).

## Background

The complainant, N.S., is an adult female with special needs. She requires daily assistance with necessities such as transportation, food preparation, personal hygiene and medications. At the time of trial, N.S. received mental health services through M.H.M.R. and attended adult daycare. She was married to appellant's son Ronnie Haynes, who also has special needs. The couple was separated by the time of trial.

A psychologist appeared for the State. He testified that, based on his review of records, N.S. presented a combination of disabilities. He later referred to her as "multiply handicapped." He found N.S. was mentally retarded while also suffering personality disorders and affective disorders. He explained that an affective disorder is an "emotion of mood, like depression or anxiety . . . ." According to his review of records, the psychologist found N.S.'s IQ level was sixty-two. In his opinion, the score indicated a "very low" level of functioning when compared with those of her age group. Specifically, he explained, two percent of the population have an IQ lower than N.S.'s. The psychologist further testified that N.S. has cerebral palsy. Because of her level of functioning, the psychologist believed N.S. would have difficulty accurately stating times and dates.

In November 2012, appellant and his wife owned a duplex with the street address numbers 2222 and 2224. N.S. and Ronnie occupied the 2222 side and Donald Montgomery and his girlfriend occupied the 2224 side.

N.S. testified at trial that she found appellant performing repairs in the kitchen of the 2224 duplex. She believed he wanted to ask her a question. Appellant told N.S. to

2

pull down her pants. She tried to get away but appellant pulled her back toward him. She agreed with the prosecutor that he put his private part in her "back part," her "butt." He penetrated her "just a little bit." And it was "uncomfortable." N.S. agreed with the prosecutor that what appellant did to her was not something she wanted to happen. Later in the State's case a detective testified that when he interviewed N.S. he asked her if appellant penetrated her anus and she answered, "yes." On December 4, 2012, a member of N.S.'s family reported the occurrence to police and an investigation ensued. It appears from testimony that no sexual assault examination was performed because of the passage of time between the report and the date of the reported occurrence.

After N.S. testified, the court admitted without objection, as a prior consistent statement, a written statement N.S. provided police on December 4, 2012. A detective also read the statement to the jury. In the statement, N.S. said that on November 23, 2012, at "approximately" 11:15 a.m. appellant was inside her duplex and woke her by tugging at her right foot. He told her to come next door and she obliged. In the duplex next door she found appellant in the kitchen. "He told [N.S.] to turn around and pull down [her] pants and bend over." He did not threaten N.S. She told appellant she did not like what he was doing because she was married to his son. N.S. stated that appellant penetrated her but she stopped him. She added he "tried" for "about forty-five to fifty minutes." Appellant then said to N.S., "'Let's go to your room.'" According to the statement, N.S. returned to the bedroom of her duplex and began watching television. Appellant arrived about ten minutes later. He lay on her bed and tried "to get romantic with [N.S.]." This continued for "about forty-five minutes" but N.S. "didn't let him do anything." N.S. then left for her neighbor's house. The psychologist expressed the

3

opinion during trial testimony that N.S.'s belief that appellant's act lasted forty-five minutes may or may not have been an accurate report of time and probably was not accurate.

Appellant's defensive case included the testimony of Gilda Pace and her cousin Lola O'Neal, who told the jury of their experiences with N.S. and Ronnie in 2010. Pace and O'Neal rented rooms in their home to "mentally challenged adults who cannot live at home." N.S. and Ronnie lived with Pace and O'Neal for about four months in 2010. During the couple's stay in the home, Pace and O'Neal generally cared for N.S. They prepared food, administered medication and reminded N.S. to take a shower and attend to similar daily tasks. In her trial testimony, Pace agreed with defense counsel that N.S. is a person who is easily confused. O'Neal testified to her opinion N.S. is not a truthful person.

Appellant also presented Montgomery as a witness. He testified that appellant was not frequently present at the duplex. Appellant was a long-distance truck driver and, according to Montgomery, was "usually . . . gone on the road all the time." Appellant's wife collected Montgomery's rent or checked on the 2224 duplex but Montgomery did not see appellant and did not "really know" him because he was always gone. Because of appellant's frequent absence, Montgomery said, he made some minor repairs to the 2224 duplex himself before he moved in. He believed a maintenance man came by the premises to check the sewer.[2]

---

[2] N.S.'s M.H.M.R. caseworker testified appellant was present at the duplex "on a few occasions" when she visited N.S.

Montgomery also described his work schedule, and that of his girlfriend. He said he was away from the duplex at work from 8:00 a.m. to 3:00 p.m. Monday through Friday, and his girlfriend worked from 2:00 p.m. to 10:00 p.m., Monday through Friday. He indicated that except for "an hour or so" he or his girlfriend was at home. He was "always there" on weekends. Montgomery testified Ronnie lived next door but said he lived alone. He said he first met N.S. after Ronnie vacated the 2222 duplex.

According to Montgomery, the 2224 duplex had a keyed lock and a dead bolt lock on the door. His girlfriend locked the house if she left before Montgomery returned from work. At some unspecified time, after Montgomery had occupied the 2224 duplex "a while," one of the locks broke. Montgomery replaced it himself but did not provide appellant a key.

Appellant's wife Mae Etta Haynes testified on his behalf. When asked about her husband's health she said he suffered with high blood pressure, high cholesterol, COPD, and a "heart condition," and in 2011 had prostate surgery. She could not recall the month of surgery but stated on cross-examination it was possibly "earlier in the year." She further testified that for almost a year after his prostate surgery appellant was not capable of sexual relations and, because of his heart condition, lacked stamina and was unable to maintain an erection. When appellant became able after the surgery, the couple had sexual relations three or four times a year. She expressed the opinion appellant was not capable of being "amorous sexually" for forty-five minutes.

November 23, the date N.S. gave for appellant's assault in her written statement, was the Friday after Thanksgiving in 2012. In her testimony, appellant's wife explained

that appellant was typically home all day on Thanksgiving and he "did all the cooking." On the day after Thanksgiving, she related, appellant "[n]ormally . . . would have to get ready to get on the road." Asked when he normally would leave, she responded, "Normally, depending on how far he would have to go, usually a Friday, late Friday or Saturday." She recalled that N.S. and Ronnie joined them and other family members for Thanksgiving in 2012.

Appellant did not testify but introduced the business records affidavit of the trucking company for which he drove. Attached to the affidavit were appellant's truck trip reports covering the period October 4, 2012 through November 30, 2012. Immediately following the report for November 23 through November 30 was a form entitled "trip record." Handwritten entries on the form corresponding to the "start date" indicated a trip began on "11-23." Second and third entries for that date indicated destinations in Arkansas and Tennessee were reached. Total mileage shown for the 11-23 entries was 806 miles.

Testimony also showed N.S. attended adult daycare each Monday through Friday. Appellant introduced business records from the daycare facility showing N.S.'s record of attendance for the period October 1, 2012, through December 28, 2012. The record showed N.S. was present on most days. The facility was closed on November 22 and 23.

Analysis

First Issue: Sufficiency of the Evidence

The indictment alleged that on or about November 23, 2012, appellant "intentionally and knowingly cause[d] the penetration of the anus of [N.S.], a person who was then and there a disabled individual, by [appellant's] sexual organ, without the consent of the said [N.S.]."

Sufficiency of the evidence is measured by the elements of the offense as defined by the hypothetically correct jury charge for the case. *Malik v. State,* 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). In our review of sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Brooks v. State,* 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson,* 443 U.S. at 319. "[T]he *Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks,* 323 S.W.3d at 895.

The trier of fact is the sole judge of the credibility of evidence and the weight to be given it. *See* TEX. CODE CRIM. PROC. ANN. art. 38.04 (West 1979); *Brown v. State,*

7

270 S.W.3d 564, 568 (Tex. Crim. App. 2008). Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Williams v. State,* 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson,* 443 U.S. at 326; *Farris v. State,* 819 S.W.2d 490, 495 (Tex. Crim. App. 1990), *overruled on other grounds by Riley v. State,* 889 S.W.2d 290 (Tex. Crim. App. 1993). Nonetheless, it is our duty to make a "rigorous and proper application" of the evidentiary sufficiency standard, one that considers all the evidence the jury heard. *Brooks,* 323 S.W.3d at 907.

By his first issue, appellant generally asserts the evidence was insufficient to support his conviction. Appellant's argument recognizes the parameters of our sufficiency review. He acknowledges that "N.S. set forth facts, which if believed, support a finding of guilt." But appellant contends that upon consideration of all the evidence before the jury, its acceptance of N.S.'s allegations against him was not rational. Said another way, he argues some of the evidence before the jury must have generated reasonable doubt in the mind of a rational juror. "[H]ere," his brief argues, "even a reasonably pro-prosecution rational trier of fact is driven to have a reasonable doubt by the numerous eccentricities and lack of corroboration." This evidence, which appellant argues "a rational trier of fact could not ignore in its determination of guilt or innocence," establishes he "lacked access both chronological[ly] and physical[ly]" to N.S. Specifically, he argues, it proves he was out of town on November 23, 2012; the offense could not have been committed at the 2224 duplex because it was occupied by

8

Montgomery, and either he or his girlfriend was at home virtually all day and Montgomery had changed the front door lock without giving appellant a key; and, appellant's physical condition prevented him from engaging in the conduct N.S. described.

Appellant's argument effectively presents the evidence he identifies as the equivalent of the "properly authenticated surveillance videotape" discussed in former Presiding Judge McCormick's dissenting opinion in *Johnson v. State,* 23 S.W.3d 1 (Tex. Crim. App. 2000). The videotape, in Judge McCormick's hypothetical, "clearly shows that B committed the robbery." But the jury, accepting the store clerk's testimony identifying A as the robber, convicts A. Judge McCormick concluded, "It was within the jury's prerogative to believe the convenience store clerk and disregard the video. But based on *all* the evidence the jury's finding of guilt is not a rational finding." *Brooks,* 323 S.W.3d at 907 (italics in original) (quoting *Johnson,* 23 S.W.3d at 15 (McCormick, P.J., dissenting)).

After careful review of the record, we cannot agree that the evidence appellant identifies, considered singly or taken together, forms the equivalent of Judge McCormick's hypothetical surveillance videotape. We find that, unlike the hypothetical videotape, appellant's evidence was not conclusive as to the facts it sought to establish but was subject to the jury's proper role to evaluate its credibility and weight. *See Lancon v. State,* 253 S.W.3d 699, 707 (Tex. Crim. App. 2008) (jury free to choose to believe all, some or none of the evidence presented).

9

A rational juror was entitled to accept as true the psychologist's testimony that because of N.S.'s childlike functioning, she probably could not accurately establish times and dates. Moreover, even if acceptance of N.S.'s testimony required that a juror agree the offense occurred on November 23, neither his wife's testimony nor appellant's trip records as a truck driver conclusively proved he could not have committed the offense on that date. The records were admitted without objection as business records, but they were prepared by appellant and the jury was not bound to accept them as accurate. Mae Etta Haynes's testimony by no means established that appellant departed Waco at a particular time on November 23. Montgomery had difficulty remembering the year he moved into the 2224 duplex. In any event, it was apparently no earlier than the latter part of October 2012. The jury may have believed the offense occurred before Montgomery occupied the duplex. Or, as judge of the credibility of his testimony, it may have chosen not to accept portions of his testimony for permissible reasons not appearing in a cold record. As well, there was no specific date provided establishing when Montgomery replaced the front door lock at the 2224 duplex. As for appellant's health-related physical limitations, the evidence was admitted through his wife. No medical evidence concerning appellant's several maladies and their resulting effects was offered. It was not irrational for the jury to disbelieve his wife's testimony that appellant was physically incapable of engaging in the charged conduct. In sum, viewing the entire record in the light most favorable to the verdict, we conclude a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Appellant's first issue is overruled.

Second Issue: Evidentiary Ruling

By his second issue appellant generally asserts the trial court reversibly erred by preventing him from presenting a defense. The complaint centers on the trial court's ruling limiting proffered testimony of Pace and O'Neal on N.S.'s ability to distinguish fantasy from reality. Appellant divides the argument under this issue into two components: (1) abuse of discretion under the rules of evidence,[3] and (2) denial of due process.

At a hearing outside the jury's presence, Pace testified to a specific instance on which Pace "was watching TV one night, and [N.S.] came in and watched it with me. And I was watching a program on Lifetime, and a lady on Lifetime was pregnant, and then later in the show she had a miscarriage, and then two days later, the same, exact thing was [N.S.]. She [claimed she] was pregnant and then she had a miscarriage. And I told her . . . , 'Okay. If you've had a miscarriage, we need to take you to the doctor to be examined,' and about 45 minutes later she came back and said, no, it was just her

---

[3] Appellant states in his brief that because the excluded testimony dealt with the competency of N.S. to testify and not her credibility, Rule of Evidence 608 could not be a basis for exclusion. By the time appellant intended to offer the testimony of Pace and O'Neal, N.S. had testified without a competency objection. Despite appellant's use of the term competency, we read his issue as going to N.S.'s credibility. *See Escamilla v. State,* 334 S.W.3d 263, 266 (Tex. App.—San Antonio, 2010 pet. refused) ("Confusing and inconsistent responses from a child are not reasons to determine she is incompetent to testify; rather, they speak to the credibility of her testimony. . . . The trial court's role is to make the initial determination of competency, not to assess the credibility or weight to be given the testimony" (citations omitted)); *Kokes v. Angelina College,* 148 S.W.3d 384, 389 (Tex. App.—Beaumont 2004, no pet.) ("If a witness meets the requirements of competency, though the issue may be close, the factfinder should be allowed to hear the testimony and make the determination of how much weight is to be given to the testimony in light of a mental infirmity").

menses [period]."  O'Neal testified to the same incident.  The trial court ruled that Pace and O'Neal could not testify of specific instances of conduct by N.S.

The decision to admit or exclude evidence is committed to a trial court's discretion.  *Green v. State,* 934 S.W.2d 92, 101-02 (Tex. Crim. App. 1996); *Montgomery v. State,* 810 S.W.2d 372, 379-80 (Tex. Crim. App. 1990).  A reviewing court will not find error with the trial court's discretionary determination as long as the ruling was within the "zone of reasonable disagreement."  *Green,* 934 S.W.2d at 102; *Montgomery,* 810 S.W.2d at 391 (op. on reh'g).

Admissibility under Texas Rules of Evidence

We glean from the record of the hearing outside the presence of the jury that the trial court relied principally on Rule of Evidence 608(b) for its ruling.  Rule 608(b) provides: "Except for a criminal conviction under Rule 609, a party may not inquire into or offer extrinsic evidence to prove specific instances of the witness's conduct in order to attack or support the witness's character for truthfulness."  TEX. R. EVID. 608(b).

Appellant contends the testimony of Pace and O'Neal concerning N.S.'s pregnancy-miscarriage statement was admissible, notwithstanding the apparent prohibition of Rule 608(b), because "evidence that calls into question the complainant's ability 'to separate fantasy from reality' is admissible under Rule 608(b) to impeach a complainant's credibility."  Appellant relies heavily on *State v. Moreno,* 297 S.W.3d 512 (Tex. App.—Houston [14th Dist.] 2009, pet. refused)*,* and argues the testimony he proffered but the trial court excluded is "virtually indistinguishable" from that found admissible in *Moreno.*  We do not agree.

*Moreno* involved the State's appeal of the trial court's grant of a new trial after his conviction of aggravated sexual assault of a twelve-year-old complainant. *Id.* at 515. The defendant Moreno's motion for new trial was based in part on his complaint he was unable to cross-examine the complainant with records from her psychiatric treatment after her outcry because the records were not admitted until the punishment phase of his trial. *Id.* at 522. On the State's appeal, the appellate court addressed the State's argument that the records would not have been admissible at the guilt-innocence phase of trial, under rule 608(b). *Id.* at 522-23. It concluded the records would have been admissible had they been offered. *Id.* at 524.

The evidence the court found would have been admissible included counseling records from the complainant's inpatient and outpatient mental health treatment during the months after her outcry. *Id.* at 517. The records included a therapist's notes reporting such findings as "the complainant's grasp of reality and her imagination are 'very much confused in her mind.'" The complainant "also admitted that she thought she had inappropriately touched others including her five-year-old brother and a cousin . . ." but "reports state that 'Each of these persons are shocked and report no such events.'" The records reported statements by the complainant's mother and stepfather that "since reporting the sexual assault by appellee the complainant could not 'distinguish between what is imagined and what is reality.'" *Id.* at 518. The court also described the complainant's mother's punishment phase testimony, during which she referred to the complainant's reported statement regarding "sex with her grandmother's dog" as "a little 12 year old girl having some [weird] fantasy." She also agreed her

daughter's "weird fantasies" could have included her allegation against Moreno. *Id.* at 518.

The court found the treatment records addressed the complainant's mental state and "directly addressed her inability to separate fantasy from reality." It found they would have been admissible under rule 608(b) "to impeach the complainant's credibility." *Id.* at 524.

Rule 608(b) prohibits the introduction of evidence of specific instances of conduct to attack a witness's credibility. TEX. R. EVID. 608.[4] Cases finding evidence of the mental capacity of a witness admissible as impeachment evidence despite the prohibition of rule 608(b) have required that the proponent show the witness's purported impairment or disability would affect the witness's credibility. *See, e.g., Perry v. State,* 236 S.W.3d 859, 865 (Tex. App.—Texarkana 2007, no pet.) (cross-examination of State's witness to show witness has suffered recent illness or disturbance is proper, "provided that such mental illness or disturbance is such that it might tend to reflect on the witness' credibility") (citing *Virts v. State,* 739 S.W.2d 25, 30 (Tex. Crim. App. 1987)); *Scott v. State,* 162 S.W.3d 397, 401-02 (Tex. App.—Beaumont 2005, pet. ref'd) (witness with history of repeated admissions to mental hospitals and medication; no abuse of discretion to exclude evidence which showed witness's condition was ongoing because nothing admitted to prove his condition affected his credibility regarding events to which he testified). The court in *Moreno* found *Scott,* among other cases,

---

[4] *See generally Shutz v. State*, 957 S.W.2d 52, 69 (Tex. Crim. App. 1997) (evidence of manipulation and fantasy, whether relating to mental capacity or moral disposition, should be analyzed under same rules that govern evidence of truthful or untruthful character).

distinguishable from its case "in that the medical records sought to be introduced here bear directly on the complainant's credibility." 297 S.W.3d at 523. The *Moreno* court's conclusion is not surprising, given the treatment records' expression of the complainant's own reports of "not remembering what really happened versus what she thought may have happened," and of her "feelings" and thoughts regarding other events that either did not occur, or may not have occurred, *id.* at 517, coupled with their expression of the therapist's opinion regarding the complainant's confused grasp of reality and her imagination. *Id.* at 518.

The single specific instance of conduct by N.S. that appellant sought to present to the jury through the lay testimony of O'Neal and Pace[5] cannot be compared with the medical records found admissible in *Moreno*. Evidence of the pregnancy-miscarriage incident might impinge N.S.'s credibility but there is no evidence showing her conduct on that occasion was the product of an ongoing mental disorder. The story thus was no more than a specific instance of untruthful conduct offered to attack N.S.'s credibility. Its admission was expressly forbidden by Rule 608(b). *See Scott,* 162 S.W.3d at 401-02. We find no abuse of discretion by the trial court in its challenged ruling.

Constitutional Challenge

Appellant also argues that if Rule of Evidence 608 operated to limit the testimony of Pace and O'Neal as the court ruled, it denied him his constitutional right to present a defense. He discusses such authority as *Rock v. Arkansas*, 483 U.S. 44, 51, 107 S. Ct.

---

[5] O'Neal and Pace described their training and experiences as licensed vocational nurses. Appellant made clear to the trial court he was not offering them as expert witnesses.

2704, 97 L. Ed. 2d 37 (1987) (finding state evidentiary rule prohibiting hypnotically refreshed testimony violated defendant's right to testify in her own behalf); *Chambers v. Mississippi,* 410 U.S. 284, 302, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973) (invalidating state evidentiary rule that abridged defendant's right to present witnesses in defense); and *Potier v. State,* 68 S.W.3d 657, 665 (Tex. Crim. App. 2002) (discussing *Rock*, *Chambers* and related cases with respect to application of Texas harmless-error rules).

The State contends appellant's constitutional argument was not preserved for our review. In the course of appellant's argument at the hearing outside the jury's presence, he asserted to the court that "by excluding this evidence, you are excluding evidence that is the keystone to our defense." The court answered by noting that the evidence "still has to meet the Rules of Evidence." Appellant responded by asserting the proffered evidence "does meet the Rules of Evidence, in our opinion, and we think that this is reversible error to exclude the keystone to our defense . . . ." Later pressed by the court to identify a rule of evidence supporting the testimony's admission, appellant referred to rules 701, 702 and 703.

By appellant's reference to the proffered evidence as the "keystone" of his defense, he did not explicitly tell the court he was contending he was constitutionally entitled to bring the evidence before the jury, rules of evidence notwithstanding, and we see in the record no indication the trial court understood appellant to be making such an argument. *See* TEX. R. APP. P. 33.1(a) (requiring timely and specific request); *Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005) (Confrontation Clause argument not clearly articulated, thus not presented to trial court); *Mendez v. State,* 138 S.W.3d 334, 342 (Tex. Crim. App. 2004) (excepting systemic requirements and waivable-only rights,

16

all complaints, whether constitutional, statutory, or otherwise, forfeited by failure to meet preservation requirements). We agree with the State's contention that appellant's constitutional complaint was not preserved.

Appellant's second issue is overruled.

Conclusion

Having overruled appellant's two issues, we affirm the judgment of the trial court.

James T. Campbell
Justice

Do not publish.