

# NUMBER 13-22-00457-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

THE STATE OF TEXAS,                                               Appellant,

v.

DANIEL SOLIS,                                                    Appellee.

## On appeal from the County Court at Law No. 1
## of Nueces County, Texas.

## MEMORANDUM OPINION

### Before Chief Justice Contreras and Justices Benavides and Tijerina
### Memorandum Opinion by Justice Benavides

Daniel Solis, appellee, was charged with obscene harassment, a class B misdemeanor. *See* TEX. PENAL CODE ANN. § 42.07(a)(1). A jury returned a verdict of guilty, but the trial court entered a judgment of acquittal shortly thereafter. By three issues, the State argues the trial court abused its discretion in acquitting Solis because: (1) Solis's post-verdict motion was not filed; (2) Solis's post-verdict motion was ambiguous; and

(3) the evidence was sufficient to convict Solis of obscene harassment. We affirm the judgment as modified.

## I. BACKGROUND

On August 5, 2020, Solis was charged by information with obscene harassment. *See id.* The complaint reads as follows:

> [O]n or about June 28, 2019, . . . SOLIS did then and there, with intent to harass, annoy, alarm, abuse, torment, or embarrass Jessica Gamboa [Moreno],[1] intentionally and knowingly initiate communication by telephone OR by electronic communication with [Moreno], and in the course of the communication, make an obscene comment OR suggestion, to-wit: threatening to accuse [Moreno] of improper relations with co-workers AND/OR [Moreno]'s attorney to [Moreno]'s employer . . . .

Trial commenced on September 27, 2022. The State called Moreno to testify. According to Moreno, she and Solis had a romantic relationship that ended in February of 2019. Moreno testified that after the relationship ended, Solis "constantly" called and left voicemails.[2] Moreno described the nature of the voicemail Solis left on June 28, 2019:

[MORENO]: Basically, we could do this the hard way or the easy way and that he was going to call directly to the company that I worked with and let them know that I was sleeping with my boss and with an attorney from Robstown.

[STATE]: Okay. And by sleeping with, is that implying sex?

[MORENO]: Intercourse, yes.

---

[1] Moreno is referred to in the record as both "Jessica Gamboa" and "Jessica Gamboa Moreno." We refer to her by the name she introduced herself as on the record.

[2] The record does not reflect any attempt by the State to amend the complaint that charged Solis with obscene harassment. *See* TEX. CODE CRIM. PROC. ANN. arts. 28.10, 28.11 (detailing the procedures the State may utilize to amend an indictment or information); TEX. PENAL CODE ANN. § 42.07(a)(4)(providing that a person commits harassment if, acting with the necessary intent, he "causes the telephone of another to ring repeatedly or makes repeated telephone communications anonymously or in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another").

2

Diane Caballero, Moreno's former coworker, also testified that she listened to the voicemail. According to Caballero, Solis "was going to call human resources to let human resources know that [Moreno] was sleeping with her boss."

At the close of evidence, Solis moved for a directed verdict, arguing that the State "failed to meet the burden of proof in proving . . . that obscenity was—occurred in this matter." Solis also argued that "something merely being offensive does not rise to the level of being obscene." The trial court denied this motion. The jury then returned a guilty verdict, which the trial court read in open court. The following colloquy occurred:

[SOLIS]: Judge, we are still going to renew our motion for a judgment notwithstanding the verdict if that's appropriate at this point. No? We are renewing our motion for a directed verdict in this case. I provided you the—or a motion for a new trial. I apologize. I threw out three different things. Are you sure you don't want to—

. . . .

THE COURT: On—you can move for both of them.

[SOLIS]: Yes, I am going to move for both, Your Honor, based on the case law I had already provided you. I believe here that the way this was ple[a]d[ed] and the evidence that was shown was still insufficient to meet the standard of obscenity or the definition of obscenity in this case in terms of the State proving all of those elements beyond a reasonable doubt.

. . . .

[STATE]: Okay. Your Honor, I believe . . . that this may be untimely after the jury verdict; but that—that aside, I mean, we submitted the evidence to the jury and the jury has found sufficient—sufficiency to—to find the Defendant guilty. I think we should respect what the jury has found—

. . . .

3

THE COURT: All right.

Not being—not having been convinced by the State in their weak argument in response to the Defendant's motion for directed verdict and/or new trial, motion for directed verdict is granted and [the court] find[s] him not guilty.

The trial court signed a written order to the same effect the following day. This appeal ensued.

## II. JURISDICTION

We first address our jurisdiction over this appeal. The State's ability to appeal from orders in criminal cases is governed by Article 44.01 of the code of criminal procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 44.01. The State has no ability to appeal from a judgment of acquittal when such an appeal could result in a second trial, regardless of whether that acquittal is rendered by the jury or the trial court. *State v. Moreno*, 294 S.W.3d 594, 602 (Tex. Crim. App. 2009). This is because such an appeal violates double jeopardy. *Id.* ("Therefore, when a trial ends, after jeopardy has attached, with a judgment of acquittal, 'whether based on a jury verdict of not guilty or on a ruling by the court that the evidence is insufficient to convict,' any further prosecution, including an appeal, is prohibited by the Double Jeopardy Clause." (quoting *United States v. Scott*, 437 U.S. 82, 91 (1978)).

However, there is a key exception to this rule. "Article 44.01(a)(3) of the Texas Code of Criminal Procedure expressly allows the State to appeal any trial court's grant of a new trial." *State v. Savage*, 933 S.W.2d 497, 499 (Tex. Crim. App. 1996). When "the trial court grants the defendant's motion for new trial based upon insufficiency of the

4

evidence . . . , double jeopardy prevents the trial court from entering any other judgment than an acquittal." *Id.* Nonetheless, the State may appeal from such an order. *See id.*

Here, the trial court's order purports to grant Solis's motion for directed verdict and finds Solis not guilty. However, "when an order is the functional equivalent of granting a motion for new trial, the reviewing court can look past the label assigned to the order by the trial court and treat the order as a motion for new trial." *Id.* at 499. A directed verdict is generally defined as "the action taken by a trial judge in a jury trial to decide the issues in the case without allowing them to be submitted to the jury because, as a matter of law, the party with the burden of proof has failed to make a prima facie case for jury consideration." *State v. Lewallen*, 927 S.W.2d 737, 739 n.2 (Tex. App.—Fort Worth 1996, no pet.). A new trial, on the other hand, "means the rehearing of a criminal action after the trial court has, on the defendant's motion, set aside a finding or verdict of guilt." TEX. R. APP. P. 21.1(a).

In a criminal case, "the trial court does not have the authority to grant a different judgment—a judgment non obstante veredicto—than that rendered by the jury." *Savage*, 933 S.W.2d at 499; *see also State v. Gallegos*, No. 08-14-00271-CR, 2015 WL 8332512, at *3 (Tex. App.—El Paso Dec. 9, 2015, no pet.) (mem. op., not designated for publication) ("Once the jury has returned a guilty verdict and that verdict is read aloud in open court, the trial court is not authorized to then grant a motion for directed verdict and enter a judgment of acquittal."). "Once a jury verdict of guilty has been returned, the only way in which a trial court may undo that verdict is by way of an order granting a motion for new trial." *State ex rel. Mau v. Third Ct. of Appeals*, 560 S.W.3d 640, 647 (Tex. Crim. App.

5

2018). However, the Court of Criminal Appeals has referred to the action of granting a new trial based on the sufficiency of the evidence as "the functional equivalent of granting a JNOV in a civil case." *Savage*, 933 S.W.2d at 499. It has further held that "a trial court's JNOV ruling after a jury determination of criminal guilt accomplishes exactly the same effect as granting the defendant a new trial for insufficient evidence—a functional acquittal." *Id.*

Here, the record demonstrates that the trial court waited until after the case was submitted to the jury, and even after it read the jury's guilty verdict into the record, before it purported to grant a directed verdict; however, as stated previously, a directed verdict is generally rendered prior to the time that a case is submitted to the jury. *See Lewallen*, 927 S.W.2d at 739 n.2; *see also Gallegos*, 2015 WL 8332512, at *3 ("Thus, [a directed verdict] is a ruling which a court makes before the case is submitted to the jury, or at the very least, before the court receives the jury's verdict."). Therefore, although the trial court's order purports to grant Solis's motion for directed verdict, we conclude the record affirmatively demonstrates that the trial court set aside the jury's verdict of guilt on Solis's motion. In other words, the record demonstrates that the trial court's order is the functional equivalent of an order granting a motion for new trial. *See* TEX. R. APP. P. 21.1(a). Thus, because the State is permitted to appeal from an order granting a motion for new trial, we have jurisdiction over this appeal.[3] *See* TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(3); *Savage*, 933 S.W.2d at 499 ("[T]herefore, the State had the right to appeal the trial court's JNOV ruling as the functional equivalent of an order granting a new trial for insufficient

---

[3] The State acknowledges that we have jurisdiction over this appeal and that the trial court's order was the functional equivalent of an order granting a motion for new trial.

evidence."); *see also State v. Blackshere*, 344 S.W.3d 400, 406 n.12 (Tex. Crim. App. 2011) ("[T]he state may appeal an acquittal rendered by the trial court following a jury verdict of guilt.").

### III.    FORM OF MOTION FOR NEW TRIAL

The State raises two complaints concerning the form of Solis's motion for new trial. First, the State argues that the trial court should not have granted Solis's motion for new trial, as the motion was made orally. *See* TEX. R. APP. P. 21.4(a) ("The defendant may *file* a motion for new trial before, but no later than 30 days after, the date when the trial court imposes or suspends sentence in open court." (emphasis added)). Second, the State argues that Solis's motion was not specific enough to provide the State with adequate notice. *See State v. Gonzalez*, 855 S.W.2d 692, 694–95 (Tex. Crim. App. 1993) ("Therefore, we hold the accused is required to allege sufficient grounds to apprise the trial judge and the State as to why he believes himself entitled to a new trial."). Solis argues that the State waived these complaints by failing to object below. We agree with Solis.

"When, as here, the State is the appellant, the error-preservation requirements that apply to a defendant before reversing a conviction apply to the State in seeking to reverse a trial court's order." *State v. Neuman*, 631 S.W.3d 866, 868 (Tex. App.—San Antonio 2021, no pet.). "Rule 33.1 provides that as a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by a specific and timely request, objection, or motion." *State v. Dunbar*, 297 S.W.3d 777, 780 (Tex. Crim. App. 2009); *see* TEX. R. APP. P. 33.1. "But Rule 33.1 does not apply to

7

rights which are waivable only or to absolute systemic requirements, the violation of which may still be raised for the first time on appeal." *Dunbar*, 297 S.W.3d at 780. The State did not object below to Solis's motion for new trial on any grounds. Thus, we must analyze whether the State's complaints on appeal concern "waivable only" rights or "absolute systemic requirements." *See id.*

We see no reason, and the State does not provide us with any, for deeming the procedural formalities that govern motions for new trial "waivable only" or "absolute systemic requirements." Courts have already held that the State can forfeit certain claims involving motions for new trial when those claims are not brought to the attention of the trial court. *See Clarke v. State*, 270 S.W.3d 573, 581 (Tex. Crim. App. 2008) (concluding that, because the State did not object, "the trial judge had authority to consider and rule upon appellant's *Brady/Giglio* claim even though it was not explicitly set out in his original written motion for new trial"); *State v. Moore*, 225 S.W.3d 556, 569 (Tex. Crim. App. 2007) ("We conclude that the State, as opponent of a tardy amendment to a motion for new trial, can forfeit its otherwise-peremptory right by inaction."); *Hampton v. State*, 838 S.W.2d 337, 340 (Tex. App.—Houston [1st Dist.] 1992, no pet.) ("The State waived its pleading sufficiency argument when it failed to object to the motion on that ground at the trial level."); *see also State v. Herndon*, 215 S.W.3d 901, 909 (Tex. Crim. App. 2007) (discussing error preservation in the context of motions for new trial and explaining that "[t]he losing party in the trial court must preserve any and all issues that it wishes to appeal"). We decline to diverge from this line of reasoning.

Thus, because the State did not object to the form of the motion for new trial, the

State has failed to preserve these issues for our review. *See* TEX. R. APP. P. 33.1(a); *Herndon*, 215 S.W.3d at 909. We overrule the State's first two issues.

## IV.    SUFFICIENCY OF THE EVIDENCE

Finally, the State contends that, "even if the trial court had before it a proper motion for new trial complaining that the jury's verdict was contrary to the law and the evidence, the State did present legally sufficient evidence to support the jury's guilty verdict."

## A.    Standard of Review & Applicable Law

We review a trial court's decision to grant a motion for new trial for an abuse of discretion. *State v. Simpson*, 488 S.W.3d 318, 322 (Tex. Crim. App. 2016). "The test for abuse of discretion is not whether, in the opinion of the appellate court, the facts present a suitable case for the trial court's action, but rather, whether the trial court acted without reference to any guiding rules or principles." *Id.* A trial court typically does not abuse its discretion in granting a motion for new trial if the defendant: (1) articulated a valid legal claim in his motion for new trial; (2) produced evidence or pointed to evidence in the record that substantiated his legal claim; and (3) showed prejudice to his substantial rights under the standards in Rule 44.2 of the Texas Rules of Appellate Procedure. *Herndon*, 215 S.W.3d at 909; *see* TEX. R. APP. P. 44.2.

"A motion for new trial challenging the legal sufficiency of the evidence presents a legal rather than a factual question." *State v. Medina*, 536 S.W.3d 528, 532 (Tex. App.— San Antonio 2017, pet. ref'd). When the trial court decides a motion for new trial that challenges the sufficiency of the evidence, "the trial court applies the appellate legal sufficiency standard of review." *State v. Moreno*, 297 S.W.3d 512, 520 (Tex. App.—

9

Houston [14th Dist.] 2009, pet. ref'd). Thus, "[t]he trial court must decide, after viewing the evidence in the light most favorable to the verdict, whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *State v. Savage*, 905 S.W.2d 272, 274 (Tex. App.—San Antonio 1995), *aff'd*, 933 S.W.2d 497. "If any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt, then the trial court abused its discretion in granting the motion for new trial." *Medina*, 536 S.W.3d at 532.

"On appeal, 'we apply the same standard of review to the trial court's grant of a motion for new trial based on the sufficiency of the evidence as we do to appellate review of challenges to the legal sufficiency of the evidence.'" *Id.* (quoting *McCall v. State*, 113 S.W.3d 479, 480 (Tex. App.—Houston [1st Dist.] 2003, no pet.)). "Evidence supporting a conviction is legally sufficient if a rational trier of fact could have found each element of the offense beyond a reasonable doubt." *David v. State*, No. PD-0307-21, 2022 WL 1548023, at *3 (Tex. Crim. App. May 11, 2022). "When reviewing the evidence, we consider the combined and cumulative force of all the admitted evidence in the light most favorable to the verdict." *Id.* "We measure legal sufficiency by the elements of the offense as defined by a hypothetically correct jury charge." *Hammack v. State*, 622 S.W.3d 910, 914 (Tex. Crim. App. 2021). "Such a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

In some cases, sufficiency of the evidence also turns on the meaning of the statute under which the defendant has been prosecuted. In other words, a reviewing court must perform a statutory analysis to determine the elements of the offense before reviewing the evidence presented. That question, like all statutory construction questions, is a question of law, which we review de novo.

*Hammack*, 622 S.W.3d at 915 (footnotes omitted).

## B.    Analysis

"A person commits an offense if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, the person . . . initiates communication and in the course of the communication makes a comment, request, suggestion, or proposal that is obscene[.]" TEX. PENAL CODE ANN. § 42.07(a)(1). The Legislature defines obscene as "containing a patently offensive description of or a solicitation to commit an ultimate sex act, including sexual intercourse, masturbation, cunnilingus, fellatio, or anilingus, or a description of an excretory function." *Id.* § 42.07(b)(3). "If the comment does contain a description of an ultimate sex act, it is also necessary to examine the content of said description to determine whether it is patently offensive, offensive but not patently so, or not offensive at all." *Ex parte Nuncio*, No. PD-0478-19, 2022 WL 1021276, at *5 (Tex. Crim. App. Apr. 6, 2022) (cert. denied).

"Patently offensive" is further defined in the penal code as "so offensive on its face as to affront current community standards of decency." TEX. PENAL CODE ANN. § 43.21(a)(4); *see Ex parte Nuncio*, 2022 WL 1021276, at *11 ("[T]he obscenity statute's definition of 'patently offensive' should apply to § 42.07(b)(3)."). In determining whether something is patently offensive, a factfinder's "personal beliefs regarding what is acceptable, tolerable, intolerable, indecent, decent, and the like are irrelevant and

immaterial, because the [factfinder] decides the issue through the eyes and mind of the average person." *Andrews v. State*, 652 S.W.2d 370, 382 (Tex. Crim. App. 1983). Indeed, the underlying policy behind requiring the jury to apply contemporary community standards is to make certain that the conduct in question "will be judged by its impact on an average person, rather than a particularly susceptible or sensitive person—or indeed a totally insensitive one." *Miller v. California*, 413 U.S. 15, 33 (1973).

We first begin by analyzing whether Solis's statement contained a description of an ultimate sex act. "[D]escriptions of 'ultimate sex acts' for the purposes of § 42.07(a)(1) and (b)(3) require more than just general averments of sexual activity." *Ex parte Nuncio*, 2022 WL 1021276, at *10. In viewing the evidence in the light most favorable to the jury, we conclude that "sleeping with" could be considered a description of an ultimate sex act; specifically, as Moreno testified, it is a euphemism for sexual intercourse.

The court of criminal appeals next instructs us to examine the "content of said description to determine whether it is patently offensive, offensive but not patently so, or not offensive at all." *Id.* at *5. Although in our legal sufficiency review we must view the evidence in the light most favorable to the factfinder, the court of criminal appeals has instructed that, in obscenity cases, we must also "make the independent determination [of] whether the material that is alleged to be obscene is constitutionally obscene." *Andrews*, 652 S.W.2d at 383; *see also Martin v. State*, No. 03-01-00692-CR, 2002 WL 31476659, at *2 (Tex. App.—Austin Nov. 7, 2002, pet. ref'd) (mem. op., not designated for publication) ("Obscenity cases are one of the rare instances in which an appellate court is constitutionally required to sit as a thirteenth (or in this a misdemeanor case, a

12

seventh) juror.").

*Miller* provided the following as an example of obscene material that could be regulated by the states: "[p]atently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated." 413 U.S. at 25. The United States Supreme Court has since held that

> [i]f and when . . . a 'serious doubt' is raised as to the vagueness of the words 'obscene,' 'lewd,' 'lascivious,' 'filthy,' 'indecent,' or 'immoral,' . . . we are prepared to construe such terms as limiting regulated material to patently offensive representations or descriptions of[ ]that specific 'hard core' sexual conduct given as examples in *Miller v. California*.

*United States v. 12 200-Foot Reels of Super 8 mm. Film*, 413 U.S. 123, 130 n.7 (1973). The Supreme Court has reiterated this principle, stating that "[t]he kinds of conduct that a jury would be permitted to label as 'patently offensive' . . . are the 'hard core' types of conduct suggested by the examples given in *Miller*." *Smith v. United States*, 431 U.S. 291, 301 (1977) (plurality op.). In other words, "it is permissible to prohibit only that obscenity that is most patently offensive in its prurience—*i.e.*, that which involves the most lascivious displays of sexual activity." *Virginia v. Black*, 538 U.S. 343, 345 (2003) (plurality op.). In interpreting our own obscenity laws, "[w]e . . . follow the decisions of the Supreme Court governing the law of obscenity." *Andrews*, 652 S.W.2d at 383; *cf. Ex parte Nuncio*, 2022 WL 1021276, at *11.

The court of criminal appeals has held that the obscene harassment statute was drafted "with an eye toward the constitutional definition of obscenity under *Miller*." *Ex parte Nuncio*, 2022 WL 1021276, at *11. Following this holding, we construe § 42.07(a)(1) as meeting the minimum floor described by the Supreme Court since *Miller*; i.e., only those

13

"hard core" descriptions of sexual conduct are prohibited. *See 12 200-Foot Reels of Super 8 mm. Film*, 413 U.S. at 130 n.7. "Sleeping with," a euphemism for sexual intercourse, is not a "hard core" description of an ultimate sex act. *See id.* The State appears to acknowledge as much by querying, "Does the fact that the physical act of intercourse was not itself described in graphic terms mean that it could not be 'patently offensive,' or could the circumstances surrounding the act be considered in determining whether the description was patently offensive?"

We disagree that the circumstances here elevate the comment's status to patently offensive. The circumstances surrounding the statement demonstrate Solis's intent to harass Moreno, but the particular content of this comment is simply not the "hard core" content to which the First Amendment turns a blind eye. *See Ex parte Lo*, 424 S.W.3d 10, 20 (Tex. Crim. App. 2013) ("Sexual expression which is indecent but not obscene is protected by the First Amendment." (quoting *Sable Commc'ns of Cal., Inc. v. F.C.C.*, 492 U.S. 115, 126 (1989)). And regardless, a statement is not considered patently offensive in Texas unless it is "so offensive *on its face* as to affront current community standards of decency." TEX. PENAL CODE ANN. § 43.21(a)(4) (emphasis added); *cf. Ex parte Nuncio*, 2022 WL 1021276, at *5 (instructing reviewing courts to "examine the *content* of said description to determine whether it is patently offensive" (emphasis added)).

In cases holding that the evidence is legally sufficient to sustain a conviction for obscene harassment, our sister courts have generally analyzed comments that contain some amount of vulgar or profane language. *See Jasper v. State*, No. 01-13-00799-CV, 2014 WL 265699, at *2 (Tex. App.—Houston [1st Dist.] Jan. 23, 2014, no pet.) (mem. op.,

14

not designated for publication) (concluding that appellant's comment that complainant's husband "didn't like fucking [her]. He liked fucking [appellant] better" was "sufficient to establish that appellant made a comment that was obscene"); *Rendon v. State*, No. 03-07-00616-CR, 2008 WL 4682434, at *1 (Tex. App.—Austin Oct. 24, 2008, no pet.) (mem. op., not designated for publication) ("A rational trier of fact could find beyond a reasonable doubt that appellant's comment to the complainant that she 'would only charge fifty cents for a fuck' contained a patently offensive description of an ultimate sex act, specifically sexual intercourse."). *But see Lafait v. State*, No. 12-18-00351-CR, 2020 WL 827136, at *4 (Tex. App.—Tyler Feb. 19, 2020, no pet.) (mem. op., not designated for publication) ("Considering how closely Appellant's request to be 'blown away' followed comments about [complainant] being 'eager to please' and willing to do 'whatever it takes,' the jury could have reasonably found that Appellant's messages constitute a solicitation to commit an ultimate sex act and are, therefore, obscene . . . .").[4] Solis's comment did not contain similarly vulgar or profane language.

We agree that Solis's statement was rude and offensive. But because Solis's comment did not contain a patently offensive description of an ultimate sex act, we conclude the trial court did not abuse its discretion in granting Solis's motion for new trial based on the legal sufficiency of the evidence. *See* TEX. PENAL CODE ANN. § 42.07(a)(1),

---

[4] The Tyler Court of Appeals' holding in *Lafait* seems to imply that a jury would be justified in finding *any* solicitation to commit an ultimate sex act is obscene. *See Lafaitt v. State*, No. 12-18-00351-CR, 2020 WL 827136, at *4 (Tex. App.—Tyler Feb. 19, 2020, no pet.) (mem. op., not designated for publication). Section 42.07(b)(3) defines obscene as "containing a patently offensive description of or a solicitation to commit an ultimate sex act . . . ." TEX. PENAL CODE ANN. § 42.07(b)(3). Whether "patently offensive" modifies both "description of" and "a solicitation to commit" is an issue of statutory construction that was not explicitly addressed in *Lafaitt. See* 2020 WL 827136, at *4. Because that particular issue is not squarely before us now, we decline to address it as well.

(b)(3); *Medina*, 536 S.W.3d at 532. We overrule the State's final issue.

## V. CONCLUSION

We modify the trial court's judgment to reflect that it granted a new trial based on the insufficiency of the evidence and entered a judgment of acquittal. *See Savage*, 933 S.W.2d at 499 ("[W]hen a jury returns a guilty verdict and the trial court grants the defendant's motion for new trial based upon insufficiency of the evidence . . . , double jeopardy prevents the trial court from entering any other judgment than an acquittal."). We affirm the trial court's judgment as modified.

GINA M. BENAVIDES
Justice

Do not publish.
TEX. R. APP. P 47.2(b).

Delivered and filed on the
25th day of May, 2023.

16